Billups v. United States of America. Mr. Spinelli, whenever you're ready. Yes, thank you, Your Honors. Good afternoon. I'm happy to be here today on behalf of Dr. Billups. The facts of the case would actually be entertaining, except for the tragic consequences of what occurred. Essentially, Dr. Billups was visiting the United States Postal Service when he saw an employee's truck that honked in a very loud way. Dr. Billups then went over to the employee's truck and inspected the front grill of the truck. The truck was parked in backwards, and when he bent down to inspect the grill, the alarm of the truck went off in a very high volume. Upon further inquiry, he learned that one of the employees at the United States Postal Service, Mr. Cain, had for Mr. Cain's amusement and the amusement of other employees at the Postal Service, put a hole in the Venetian blind next to his office so that he could watch when other employees would walk by his truck. So how is that, this is Judge Thacker, how is all of that, putting a hole in the blind so he could watch when he set off the alarm when people got near it, not an intentional act? How is that negligent? Yes, yes, Your Honor, and I appreciate the question. The question itself, the way it was addressed at the lower level was to define that as a volitional, as a series of volitional acts. As a volitional act, the lower court judge argued as a volitional act that places it outside of the scope of the Federal Tort Claims Act. However, the, there was no authority cited for that broad extension of the, of the Federal Tort Claims Act. Okay, I guess my question was, how is it negligence? Right. You're alleging negligence, how is it negligence then? We have, Your Honor, it's a negligent act of horseplay by specifically activating his truck horn. It was negligent in that it... Specifically activating his truck horn sounds intentional. It is a volitional, it is a volitional act, but the fact that it was a volitional act to activate the horn does not place it outside the scope of the Virginia Tort Claims Act itself. Specifically, it appears that what the judge relied on was the idea that anything that arose from an assault or battery within the meaning of the Federal Tort Claims Act would preclude recovery under that. However, the one of the issues is simply because there's volitional contact involved, that does not render it a, an intentional act outside the scope of the Federal Tort Claims Act. I don't think I said that. Oh, yeah. No, Counselor, I can't tell which of two things you are saying. Are you saying that this conduct was not intentional? Or are you saying just because it's intentional doesn't take it out of the scope of the Fort, the FTCA? Thank you, Your Honor. The latter, the latter, simply because it's an intentional act or some associated volitional act does not take it outside the scope. But the real issue here... Mr. Spinelli, can I ask a different question, which is, goes back to the very description that you began with, the sort of the, for his own amusement, looking through the blinds and in order to amuse his fellow co-workers, how was any of that within the course of his employment, which is another jurisdictional requirement that is necessary in order to waive sovereign immunity? I mean, engaging in a horseplay, what does that have to do with your, the defendant's job as a postal employee? Yes, Your Honor. He was, he was working during the course of this, during, during the, during the course of his actions. He was logged in, checked in, and his other co-workers were involved in the same action. And the manager had some knowledge of the same, of the same set of facts as well. His choices were made during the scope of, during the scope of his employment. But just because the manager had some knowledge of it, you're not saying the manager acquiesced in it or said that's what he should be doing in the scope of his employment, are you? No, Your Honor. No, Your Honor. In summary, To go back to Judge Diaz's question, how is horseplay within the scope of his employment as a custodian at the post office? Yes, Your Honor. It is in much the same way that someone performing a negligent act while driving on behalf of their employer or failing to, failing to take appropriate cautions while doing some other action on behalf of their employer. So volitionally, but they're still acting within the scope of their employment, at least as, at least in respect to, at least in respect to the case law relative to Respondee at Superior. So, with respect, with respect to the question, the ultimate question in this case is whether it's an assault or a battery. Essentially, we're talking about a battery here. Claim is that the sound of the airwaves making contact or striking Mr. Billups constitutes a battery under Virginia law. Unfortunately for, for the United States in this regard, there's no authority rendering sound waves functional as the medium for, for a battery. There isn't any case law in Virginia. Virginia has not addressed it. And so what about, what about the Adams case in Virginia that says that lasers in a victim's eyes are sufficient, that contact by an intangible substance can constitute a battery? Yes, Your Honor. Why isn't that the same thing here? Just because Virginia hasn't specifically reached sound waves as an, as an intangible substance, they have concluded that intangible substances can constitute battery. So why doesn't that cause you problems here? Yes, Your Honor. Well, Your Honor is right to point it out as something that would tend to, that would tend to permit such a conclusion. But the Adams case is a significantly distinguishable. Your Honor, Judge Thacker, you're right to point out that it involves lasers, which actually photons, right, being, being processed through a specific and focused medium. Lasers are significantly less common than... Okay, are sound waves an intangible substance? Sound waves, as I understand it, are molecules of air that are vibrating. Is that an intangible substance? Well, no court has said as much, Your Honor. No court has said as much. Let Judge Harris... Is it your understanding that your claim doesn't sort of sound in battery? And that's the standard we've applied. It doesn't sound in battery, unless you 100% can win your claim as a battery claim. Thank you, Your Honor. And I appreciate the question. And no, actually, what we're saying is that it's not a battery claim. We feel we could win as it was, it is an act of negligence on the part of the... That actually wasn't my question. My question is, do you think that a claim is not covered under this exception for battery? Unless it is a 100% sure thing, you're going to win this case as a battery claim. Like, I guess what I'm saying is, this sure sounds like a battery claim. And whether the government can go into Virginia court and argue successfully that Adams is distinguishable or not, doesn't really much affect my thinking about that, because it's a claim that your client's bodily integrity was intentionally violated when it came into contact with some substance, whatever we're gonna call it. And that sounds like a battery claim. I don't know 100% that you're gonna win in Virginia court, although it looks to me like you might, but I don't think that's the question. It's just enough that the grab-a-men of the complaint sounds in battery. Why is that wrong? Thank you, Your Honor. And the reason that it's wrong is because it has not been defined as such in Virginia law. If this court were to support the idea that airwaves constitute a battery claim, that would be new law created in Virginia that has not been through the process of jurisdictional review and consideration by the state courts, it's it's a novel idea. There are many questions that would follow, that would associate, be associated with the claim that a loud noise itself can constitute a battery. It may or it may not, but at the end of the day, but other courts haven't taken that position yet. And there are specific, and I'm not gonna, the court's aware of the public policy reasons and considerations behind making this a potential battery claim. So if Mr., excuse me, if Dr. Billup's claim is excluded here because it might be or it could be construed as a claim that doesn't actually exist in the Commonwealth yet, then that is that is a premature decision. It is, it is the federal court making, making new law. Counsel, actually, actually counsel, let me, we have case law saying this isn't a exception. That's a question of federal law. And we should be looking at federal common law and sources like the restatement. So would that make you more comfortable if we say that as a matter of federal law, this pretty much looks like a battery claim to us? Judge, the, the question as to whether it's a, well, the first question that I would have is, I'm not aware of the support for making the claims that airwaves, the sound waves can, can be battery either, either significantly in, in, I haven't seen it in federal court or in state court. So it is an awful point to be made at any grounds. I would also suggest that if this court finds that conclusion to be accurate, and if this looks like a battery claim or enough to base the dismissal of a, of a claim for negligence on it, then the effect of that is to expand, expand the law, expand it towards, and it will be effectively in, in state law as well. Mrs. Spinelli, can I take you back to this course of employment exception? And I, I recognize that that wasn't a focus of the, of the briefs, but it is a jurisdictional question. And it seems to me that if this falls outside of the course of employment, battery or not, negligence or not, it really doesn't matter. And I'm still having trouble trying to figure out how this, these events, as you have described them, fall within the course of employment. I'm going to read you something from a Virginia Supreme Court case. And I know it's not fair that because you don't, you may not have it in front of you, but here is how the Virginia Supreme Court would define something that falls within the course of employment. First, it has to be something that fairly and, and is a business of the employer. So I don't see how, you know, engaging in a prank as described here is at all incident to the work of the United States Postal Service. And second, it has to, whatever the act is, has to be done while the servant was engaged upon the master's business. I suppose you can make an argument about that, but it also has to be done with a view to further the master's interests or an attempt to perform the master's business. And again, engaging in this kind of a horseplay activity just doesn't seem to me at all to be consistent with the work of the Postal Service. And then the last element is that it can arise wholly from some external, independent, and personal motive on the part of the servant to do the act upon his own account. It seems to me that that's exactly what happened here. I mean, this has nothing at all to do with the mission of the United States Postal Service or the specific work that the servant, in this case, the employee, Mr. Kane, should have been engaged in as a custodian of the Postal Service. So it just seems pretty clear to me that this case falls within the government's sovereign immunity. Well, I appreciate the position that you've taken, that you appear to take. Well, I just want to hear from you. You know, and again, I recognize that this was not a focus of the briefs, but I sure like your take on it. Sure, I understand, Your Honor, and thank you. I think the critical issue there is whether, if this were in a civil context, right, a different civil context with a defendant in state court, I don't think there would be an issue that the employer is responsible as much as the employee himself. Ms. Dr. Phillips was going to the post office to conduct his business while he was doing that. So let me, so let me stop you. Why do you think there's a difference? What do you think makes the difference? Specifically, the difference is, well, it's, at all points, Mr. Kane was under the control and the supervision and the training of the United States Postal Service. It's not been alleged that he was acting outside of that scope. It's not been alleged that he was doing anything other than, it's not been alleged that he was not in his office or that he was not otherwise engaged in activities associated with his employment. So I don't suspect that there is an issue. I don't believe that there is an issue with the status of his employment there. And it just comes down to a matter of responding as Okay. All right. Thank you, Mr. Spinelli. Yes, sir. You've got some time reserved for rebuttal. Thank you. Thank you. Good afternoon, Your Honor. Mr. Lucia, you're back for back from war. I thought we had finished with you. Yes, Your Honor. It's been a pleasure. My name is John Lucia and I represent the appellee of the United States in this matter. As Your Honor's noted this, if you read the complaint, this case sounds like a battery. And the reason that it sounds like a battery is because, in substance, it pleads a claim that arises out of a battery as opposed to a claim that arises out of negligence. Before you get to that, why didn't you rest on this issue of the course of employment? Am I missing something there? You're not, Your Honor. And of course, the court can affirm on any basis that it finds in the record. We just viewed the has sovereign immunity waived as sort of a predecessor step to, even if waived, is there another reason that the court would lack jurisdiction? So the threshold question was, can the US be sued for this at all? And so that's why we address this one. And also, because I'm sorry, but you did you argued on contributory negligence, right in the is like, why not this? Like, this seems like, I mean, I don't want to tell you how to argue your cases. But this seems like maybe a stronger argument than contributory negligence. And they both come well after the threshold question of, you know, contributory negligence comes way after the threshold question of, has there been a waiver? That's correct, Your Honor. We did make that argument. And listening to the court today, we should have made the other one too. But we did not. And the reason that we did not is because, again, we thought that the sovereign immunity waiver threshold question was dispositive in this case. And that's because, as the court has pointed out this afternoon, that if a complaint pleads in substance, in reality, a claim that arises out of a battery, then the United States does not waive sovereign immunity under 28 U.S.C. Section 2680-H. One thing I do want to note is that this case is not expanding law, whether on the federal side or the Virginia side. And that's true because federal question is not, has a plaintiff successfully pleaded a case for battery? The question is, does the claim arise out of a battery as opposed to one of negligence? So the court would not be saying that there is a cause of action under these circumstances in Virginia for battery, just that for purposes of or not. This case, as it's been pleaded, would fall on the U.S. has not waived sovereign immunity side of things, as opposed to the yes, the U.S. has. Another item I want to point out is the argument that the United States is making, and were the court to agree with it, the effect of the court's decision on that argument would not be that a claim falls within the intentional tort exception 2680-H, simply because there has been volitional conduct. It's because here there's been volitional conduct that was intended to violate the bodily integrity, the physical integrity of a plaintiff. And so it's both of those things. So it's not merely that someone did something intentionally. It's that the person did something intentionally, intentionally so that someone in this case would hear the horn or that someone would be touched by, would be contacted by the intentional act. So again, this is not, this would not be expanding the scope of the 2680-H intentional tort exception. It's squarely within that. And that's because in substance, what Dr. Phillips has pleaded is a claim arising out of battery as opposed to one of negligence. And for those reasons, Your Honor, the court should affirm the district court. Thank you, Mr. Lucio. Thank you. Mr. Spinelli, you've got some time for rebuttal. Can't hear you. We cannot hear you. Yes, Your Honor. Thank you. Oh, there you go. Yes. All right. Very well. May it please the court, the response of the issue that counsel for the United States has addressed does not, does not point out that the issue as they view it is not related to the volitional nature of the act, but instead addresses the issues associated with whether or not this constitutes a battery. We do not believe it does. We think that the pleadings on the face of them and the pleadings of the initial complaint, make the statement that he was, that the, Mr. Kane was acting at all times within the scope of his employment, that he... Well, just saying it doesn't make it so. Your Honor is, Your Honor is correct. Just like just saying it was negligence doesn't make it negligence. When the facts as alleged, seem intentional. Yes, Your Honor. Just saying it doesn't make it so that's absolutely correct. What I would point to is... So going back to the scope of his employment argument, you were saying all of this was while he was working at the postal service, but he defaced postal property when he cut a hole in the Venetian blinds for his prank. How's that within the scope of his employment? Is it been, and I think that it's specified in the complaint that it was subsequently repaired with, or the blinds... Yeah, but that wasn't the question. The question was, how is his defacing of the blinds, the property of the post office, so that he could carry out his prank within the scope of his employment? The fact that it was repaired is probably indicates that it wasn't within the scope of his employment, because when they found out about it, it had to be repaired. What has also been alleged is specifically that he was doing so with the awareness of at least two other, at least two other postal employees. And the manager herself, the postmistress here, also was involved with that, at least at some point in the process. So the fact of the matter is based on the fact, at least at this point, the allegation is such that on its face, viewed in the light most favorable to the, to the plaintiff. Well, the Federal Tort Claims Act is supposed to be strictly construed with any ambiguities going to the sovereign. So what about that? Yes, Your Honor, I would say that's if we, that's, that's a different step or different category of review, I would say. So, so, so based on that, in any event, if the, if the court does not permit this case to move forward, the net effect for the plaintiff here, Dr. Billups is, is effectively out of any, any recovery. He's not afforded any, any opportunity for redress effectively through this, because the court has, the lower court has determined that it's barred. And another problem or issue that... No, why couldn't you bring it in, in state court under the Adams? Well, I'm sorry, go ahead. Right, why don't I bring it in the state court under, under Adams? Well, Adams, of course, is a criminal case. And the issue with Adams, it does not afford a new cause of action for Battery. We would be pursuing a claim under, we would be attempting to pursue a claim under, under a negligence action. But we would, we would run into the same issues on the, on the counter side. That is to say, if he's acting as, if he's, during the scope of his employment as alleged, if he's doing the things as, as part of his work, he's, he's tending to customers at the time, there's a good chance that he's going to be considered acting within the scope of this employment for purposes of this particular action, which  He was tending to customers at the time? Is that in the complaint? That is not, Your Honor. But he was, he was, he was active while he was... He was being paid. He was on duty. Yes, Your Honor. Yes, Your Honor. So, but more than that... Mr. Mellon, are you saying you don't, you don't have a remedy against the individual employee? Is that what you're saying? Well, it certainly wouldn't be one in battery, and there's no prejudice against any future position, but there's no, there's no recognized cause of action for that under, under battery. So we would be effectively, we would be effective... No, the Adams case says intangible substances can constitute a battery in Virginia. May I respond? Certainly. Yes, go ahead. Thank you. The Adams case suggests that certain substances can do that, but it's not clear and it never expands over into, into the idea that sound waves. In fact, the, the Judge Lemon's dissent in that case specifically advised against rendering a, expanding claims to include noise and volume for purposes of battery. So based on, based on all of that, Your Honor, I would ask that we have a... All right. Thank you, Mr. Spinelli. On behalf of the court, again, I want to thank you both for your arguments here this afternoon. We very much appreciate that. And of course, we can't come down and greet you personally, but know that you leave here with our thanks and gratitude and be well and stay safe. And with that, the court will stand adjourned until tomorrow morning. Madam Clerk, if you would adjourn court. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Albert Diaz, Stephanie D. Thacker, Pamela A. Harris